# ATTACHMENT A
# STATEMENT OF FACTS: GAVIN SMITH

*The United States and the Defendant agree that if this case proceeded to trial, the United States would prove the following facts below beyond a reasonable doubt. The parties agree that these are not all of the facts that would have been proved if this case proceeded to trial.*

Defendant **GAVIN BURNS SMITH** ("**SMITH**") is a resident of Florida. Between in or about December 2010 and continuing through in or about April 2012, **SMITH** was a minority co-owner and involved in the day to day operations of Precision Peptides ("Precision"), a company through which **SMITH** and others sold body-enhancing injectable drugs to individual consumers seeking to enhance their physiques. Between in or about April 2012 and continuing through in or about May 2015, **SMITH** owned and operated DNA Peptides, a company through which **SMITH** also sold body-enhancing injectable drugs to individual consumers seeking to enhance their physiques. The drugs **SMITH** sold through Precision and DNA Peptides were not approved by the United States Food and Drug Administration ("FDA") for use in humans.

**SMITH** sought buyers for his drugs by placing print advertisements for peptides sold by Precision Peptides and, later, DNA Peptides in bodybuilding magazines and websites, by promoting the companies at bodybuilding conferences, and by offering drugs for sale on the companies' websites and Facebook pages. Specifically, **SMITH** offered drugs for sale on behalf of Precision using the website precisionpeptides.com. Between April 2012 through at least August 22, 2012, **SMITH** offered drugs for sale on behalf of DNA Peptides using the website dnapeptides.com. However, after law enforcement executed search warrants issued by the United States District Court for the Middle District of Florida at both Precision and DNA Peptides on August 22, 2012, **SMITH** began offering drugs for sale on behalf of DNA Peptides using the website dnapeptides.net. **SMITH** also re-located DNA Peptides' place of business to his residence after the execution of the search warrants on August 22, 2012.

**SMITH**'s websites (precisionpeptides.com, dnapeptides.com, and dnapeptides.net) each displayed numerous disclaimers stating that all products sold were "for research/laboratory use only." In addition, prior to purchasing the products from the website, each customer was asked to certify that he or she read the following "legal disclaimer": "The chemicals/materials for sale here are intended for laboratory and research use only, unless otherwise explicitly stated. They are not intended for human ingestion or for use in products that may be ingested." **SMITH** knowingly used these disclaimers as part of his ruse to avoid FDA scrutiny. In spite of these disclaimers, **SMITH** advertised his websites and products extensively in bodybuilding magazines, hired professional bodybuilders to promote his products, advertised his products at bodybuilding conventions, and sold his products almost entirely to bodybuilders for their personal. He also provided information to his customers, via the companies' websites, Facebook pages, and in person, on how to self-administer drugs, including recommended dosages and placement of the injections, to best produce the desired bodily enhancements. **SMITH** also hired professional bodybuilders to claim that they have personally experienced results from taking certain products sold by **SMITH** via Precision and DNA Peptides.

The drugs **SMITH** sold through Precision and DNA Peptides included Growth Hormone Releasing Peptide-2 ("GHRP-2"), Growth Hormone Releasing Peptide-6 ("GHRP-6"),

9

Melatonan II, Growth Hormone Releasing Hormone ("CJC-1295"), Ipamorelin, Human Growth Hormone Fragment ("HGH Fragment"), Mechano Growth Factor, and Dehydroepiandrosterone ("DHEA"), none of which the FDA has approved for use in humans.

On dates that include the following, **SMITH** sold and delivered the drugs across state lines via the precisionpeptides.com, dnapeptides.com, and dnapeptides.net websites:

- On November 21, 2011, an undercover federal agent accessed the precisionpeptides.com website and used a credit card to buy four vials of Sildenafil Citrate, four vials of GHRP-2, one vial of Melatonan II, two vials of CJC-1295, and one vial of Myostatin Propeptide. **SMITH** subsequently caused these products to be shipped to the agent via the U.S. mail from Lutz, Florida, to Laurel, Maryland. The vials' labels stated that the contents were for "research use only" and "not intended for human use." **SMITH** provided no directions for use on any product labels or accompanying paperwork. Laboratory analysis confirmed the vials' contents to be as advertised on **SMITH**'s website, with the exception of the vial alleged to contain Myostatin Propeptide (which did not contain such drug).

- On February 9, 2012, the agent again accessed the precisionpeptides.com website and used a credit card to buy four vials of CJC-1295, sixteen vials of GHRP-2, four vials of Ipamorelin, and four vials HGH Fragment. **SMITH** subsequently caused these products to be shipped to the agent via the U.S. mail from Lutz, Florida, to Laurel, Maryland. The vials' labels stated that the contents were for "research use only" and "not intended for human use." **SMITH** provided no directions for use on any product labels or accompanying paperwork. Laboratory analysis confirmed the vials' contents to be as advertised on **SMITH**'s website.

- On May 2, 2012, the agent accessed the dnapeptides.com website and used a credit card to buy four vials of GHRP-2, four vials of CJC-1295, two vials of HGH Fragment, and four vials of Ipamorelin. **SMITH** subsequently caused these products to be shipped to the agent via the U.S. mail from New Port Richey, Florida, to Laurel, Maryland. The vials' labels stated that the contents were for "research use only" and "not intended for human use." **SMITH** provided no directions for use on any product labels or accompanying paperwork. Laboratory analysis confirmed the vials' contents to be as advertised on **SMITH**'s website.

- On November 1, 2012, the agent again accessed the dnapeptides.com website and used a credit card to buy sixteen vials of GHRP-2, four vials of CJC-1295, four vials of HGH Fragment, and four vials of Ipamorelin. **SMITH** subsequently caused these products to be shipped to the agent via the U.S. mail from New Port Richey, Florida, to Columbia, Maryland. The vials' labels stated that the contents were for "research use only" and "not intended for human use." **SMITH** provided no directions for use on any product labels or accompanying paperwork. Laboratory analysis confirmed the vials' contents to be as advertised on **SMITH**'s website.

- On April 17, 2013, the agent again accessed the dnapeptides.com website and used a credit card to buy one vial of ACE-031, one vial of Follistatin, four vials of GHRP-2, and one vial of PT-141. **SMITH** subsequently caused these products to be shipped to the agent via the U.S. mail from New Port Richey, Florida, to Columbia, Maryland. The vials' labels stated that the contents were for "research use only" and "not intended for human use." **SMITH** provided no directions for use on any product labels or accompanying paperwork. Laboratory analysis confirmed the vial containing GHRP-2 to be as advertised on **SMITH**'s website.

- On August 5, 2013, the agent again accessed the dnapeptides.com website and used a credit card to buy two vials of GHRP-6, two vials of CJC-1293, one vial of Follistatin, and one vial of Ipamorelin. **SMITH** subsequently caused these products to be shipped to the agent via the U.S. mail from New Port Richey, Florida, to Columbia, Maryland. The vials' labels stated that the contents were for "research use only" and "not intended for human use." **SMITH** provided no directions for use on any product labels or accompanying paperwork. Laboratory analysis confirmed the vials containing GHRP-6 and Ipamorelin to be as advertised on **SMITH**'s website. The vial alleged to contain "CJC-1293" tested positive for GHRP-2, but not CJC-1293.

- On March 12, 2015, the agent accessed the dnapeptides.net website and used a credit card to buy one vial of Melanotan II, four vials of GHRP-6, four vials of CJC 1295, two vials of Sermorelin, two vials of TB-500, and two vials of Triptorelin. **SMITH** subsequently caused these products to be shipped to the agent via the U.S. mail from New Port Richey, Florida, to Beltsville, Maryland. The vials' labels stated that the contents were for "research use only" and "not intended for human use." **SMITH** provided no directions for use on any product labels or accompanying paperwork. Laboratory analysis confirmed the vials' contents to be as advertised on **SMITH**'s website, with the exception of the vial alleged to contain Triptorelin (which did not contain such drug), and the vial alleged to contain Sermorelin (which contained Ipamorelin).

**SMITH** knowingly introduced misbranded drugs into interstate commerce, and did so with the intent to defraud and mislead the FDA. The products that **SMITH** sold are "drugs" pursuant to the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 321(g), because they were intended to affect the structure and function of the body. The drugs that **SMITH** sold and introduced into interstate commerce were misbranded within the meaning of the Food, Drug, and Cosmetic Act ("FDCA") because their labels bore false and misleading labeling, in that the labels stated that the products were for research use only, yet **SMITH** knew and fully intended that the products be used to affect the structure and function of the body. The drugs were also misbranded because their labels lacked adequate directions for use, adequate warnings, the name of the manufacturer, packer, or distributor, and other required information (such as expiration dates).

I have read this statement of facts, and have carefully reviewed it with my attorney. I acknowledge that it is true and correct.

11/2/2015
Date

_Gavin Burns Smith_
Gavin Burns Smith